IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil No. 1:16-CV-212-MR
[Criminal Case No. 1:00-CR-74-MR-1]

| | |
|---|---|
| RICHARD JACKSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**RESPONSE TO THE GOVERNMENT'S MOTION TO DISMISS**

<u>TABLE OF CONTENTS</u>

I.  THE FACTS AND JURY FINDINGS IN THIS CASE ARE
    IRRELEVANT TO MR. JACKSON'S *JOHNSON* CLAIM....................1

II. MR. JACKSON'S *JOHNSON* CLAIM IS NOT
    PROCEDURALLY BARRED...............................................2

III. MR. JACKSON'S SINGLE CONVICTION FOR USING A
     FIREARM AND CAUSING THE DEATH OF A PERSON
     DURING A CRIME OF VIOLENCE PURSUANT TO 18
     U.S.C. §§ 924(C) & (J) MUST BE VACATED BECAUSE
     THE ALLEGED UNDERLYING OFFENSES DO NOT
     QUALIFY AS CRIMES OF VIOLENCE PURSUANT
     TO 18 U.S.C. § 924(C)(3)...........................................5

    A.  Mr. Jackson Was Convicted of a Single Criminal Offense.............5

    B.  Mr. Jackson's Single Conviction Must Be Vacated Because
        None of the Three Underlying Predicate Crimes Qualify
        as a Crime of Violence Under 18 U.S.C. § 924(c)(3)...................6

        1.  Murder Is Not Categorically a Crime of Violence
            Pursuant to § 924(c)(3)(A)....................................6

            a.  Federal Murder Does Not Categorically Require
                the Level of Intent Necessary of a Crime of
                Violence................................................7

            b.  Federal Murder Does Not Categorically Require
                the Level of Force Necessary of a Crime of
                Violence...............................................13

        2.  Aggravated Sexual Assault Is Not Categorically a
            Crime of Violence Pursuant to § 924(c)(3)(A).................16

            a.  Engaging in a Sexual Act Categorically Does Not
                Require the Use of Force...............................16

i

    b. Aggravated Sexual Assault Categorically Does Not Require the Use or Threatened Use of Force .................19

   3. Kidnapping Is Not Categorically a Crime of Violence Pursuant to § 924(c)(3)(A) .......................................21

IV. MR JACKSON'S CONVICTION MUST BE VACATED.....................21

  A. The Error Is Not Harmless ............................................................21

  B. The Result Is Not Absurd...............................................................23

CONCLUSION....................................................................................................24

In June 2016, after receiving authorization from the Fourth Circuit Court of Appeals, Mr. Jackson filed the 18 U.S.C. § 2255 motion currently before this Court. The Government filed a Motion to Dismiss Petitioner's motion on January 15, 2020. [Doc. 17]. Petitioner now files this Response.

## I. THE FACTS AND JURY FINDINGS IN THIS CASE ARE IRRELEVANT TO MR. JACKSON'S *JOHNSON* CLAIM.

The Government's recitation of the factual background and jury's findings, [Doc. 17 at 3-4, 12, 14],[1] serves no legitimate purpose, as they are irrelevant to the constitutional questions at issue in Mr. Jackson's § 2255 motion. The question before the Court is whether murder, aggravated sexual assault, and kidnapping categorically qualify as crimes of violence under 18 U.S.C. § 924(c), which is purely a question of statutory interpretation. *See United States v. Davis*, 139 S. Ct. 2319, 2327 (2019) (applying categorical approach to § 924(c)(3)(B), noting "[w]hile the consequences in this case may be of constitutional dimension, the real question before us turns out to be one of pure statutory interpretation."); *Stokeling v. United States*, 139 S. Ct. 544, 554-55 (2019) (applying categorical approach to § 924(e)(2)(B)(i), which language is nearly identical to § 924(c)(3)(A)).

---

[1] Petitioner cites to the ECF generated page numbers.

1

Mr. Jackson was convicted of a single count of using a firearm and causing the death of a person during and in relation to a crime of violence under 18 U.S.C. §§ 924(c) & (j).  [Doc. 17 at 4].  The Government's indictment alleged three underlying crimes of violence: (i) murder pursuant to 18 U.S.C. § 1111(a), (ii) kidnapping pursuant to 18 U.S.C. § 1201(a)(2), and (iii) aggravated sexual assault pursuant to 18 U.S.C. § 2241(a)(1)-(2).  These offenses must qualify as "crimes of violence" under the definitions found in 18 U.S.C. § 924(c)(3)(A) (the "force clause") or § 924(c)(3)(B) (the "residual clause").  The Supreme Court has held that the residual clause is unconstitutionally vague.  *See United States v. Davis*, 139 S. Ct. 2319 (2019) (applying *Johnson v. United States*, 135 S. Ct. 2551 (2015) to § 924(c)(3)(B)).

The decisive question in this case is whether the three alleged crimes of violence still qualify as crimes of violence under the remaining force clause.  This is a statutory interpretation question of whether each offense categorically has "as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A); *see Stokeling*, 139 S. Ct. at 554-55.

## II.    MR. JACKSON'S *JOHNSON* CLAIM IS NOT PROCEDURALLY BARRED.

The Government first argues that Mr. Jackson has procedurally defaulted his claim by failing to raise it on direct appeal, and that Mr. Jackson can neither establish

2

cause and prejudice or actual innocence to excuse this default. [Doc. 17 at 5-7.] This argument is misplaced.

Mr. Jackson filed an application for leave to file this second or successive motion pursuant to 18 U.S.C. § 2255 within a year of the Supreme Court's establishment of a new rule of constitutional law in *Johnson v. United States*, 135 S. Ct. 2551 (2015). In *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court held that the rule from *Johnson* applied retroactively. And, in *Davis*, the Supreme Court expressly held that the rule from *Johnson* applies to the particular statute underlying Mr. Jackson's conviction: 18 U.S.C. §§ 924(c). *Davis,* 139 S. Ct. 2319.

Mr. Jackson's current claim is based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). Such a claim is cognizable in a second or successive petition according to the plain language of the federal habeas statute. *Id.*; *see also* § 2244(a)(2)(A).

There simply is no requirement in this statute, or Supreme Court precedent, for Mr. Jackson to have raised his current *Johnson* claim on direct appeal *See*, *e.g.*, *Evans-Garcia v. United States*, 744 F.3d 235, 240 (1st Cir. 2014) (federal inmate entitled to file second or successive motion based on new rule announced in *Miller v. Alabama*, 567 U.S. 460 (2012)); *United States v. Evans-Garcia*, 322 F.3d 110 (1st

3

Cir. 2003) (same federal inmate did not raise any claim similar to *Miller* on direct appeal).

The Government cites no authority for a requirement beyond *Bousley v. United States*, 523 U.S. 614, 621 (1998). The Court in *Bousley*, analyzing the application of a case that did not announce a *new* rule of constitutional law, merely noted that "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Id.* In fact, *Bousley* recognized that "decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct" apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal." *Id.* (quotations and citations omitted). *Johnson* is just such a case.

The Government surely knows that hundreds of federal prisoners have raised *Johnson* claims in second or successive motions, with many having been granted relief.[2] And the Government knows that many of these petitioners did not raise

---

[2] *See, e.g.*, United States Department of Justice, *Attorney General Sessions Delivers Remarks Calling for a Legislative Fix to the Armed Career Criminal Act*, Aug. 1, 2018, available online at https://www.justice.gov/opa/speech/attorney-general-sessions-delivers-remarks-calling-legislative-fix-armed-career-criminal (last visited March 25, 2020) (noting that over 1,400 federal inmates had been released after filing petitions for collateral review after *Johnson*).

*Johnson*-like claims on direct appeal.  For the Government to now argue that Mr. Jackson should have raised such a claim on direct appeal is a red herring.

**III.  MR. JACKSON'S SINGLE CONVICTION FOR USING A FIREARM AND CAUSING THE DEATH OF A PERSON DURING A CRIME OF VIOLENCE PURSUANT TO 18 U.S.C. §§ 924(C) & (J) MUST BE VACATED BECAUSE THE ALLEGED UNDERLYING OFFENSES DO NOT QUALIFY AS CRIMES OF VIOLENCE PURSUANT TO 18 U.S.C. § 924(C)(3).**

**A.  Mr. Jackson Was Convicted of a Single Criminal Offense.**

Mr. Jackson was convicted of a single count of using a firearm and causing the death of a person during and in relation to a crime of violence under 18 U.S.C. §§ 924(c) & (j).  The Government acknowledges that this was the only offense alleged in Mr. Jackson's indictment, and the only offense for which the jury found Mr. Jackson guilty.  [Doc. 17 at 4, 9-10].  Mr. Jackson was not convicted of any count of murder, aggravated sexual assault, or kidnapping.  Rather, the jury only found that Mr. Jackson had committed these three predicate federal crimes as was required to convict him of the single substantive offense of using a firearm and causing the death of a person during and in relation to a "crime of violence" under 18 U.S.C. §§  924(c) & (j).

5

**B.** **Mr. Jackson's Single Conviction Must Be Vacated Because None of the Three Underlying Predicate Crimes Qualify as a Crime of Violence Under 18 U.S.C. § 924(c)(3).**

For Mr. Jackson's single conviction to stand, the Government is required to prove, *inter alia*, that the offense occurred during and in relation to a "crime of violence." 18 U.S.C. §§ 924(c) & (j).

The Supreme Court has held § 924(c)(3)(B), known as the "residual clause," is unconstitutionally vague. *See Davis*, 139 S. Ct. at 2327. Thus, Mr. Jackson's conviction can stand only if federal murder, aggravated assault, or kidnapping qualify as crimes of violence within the limited meaning of 18 U.S.C. § 924(c)(3)(A), known as the "force clause." This clause *requires* that these offenses have *as an element* of the substantive offense, "the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* Neither kidnapping, murder, nor aggravated sexual assault require the violent physical force necessary to qualify under the force clause.

**1.** **Murder Is Not Categorically a Crime of Violence Pursuant to § 924(c)(3)(A).**

Federal murder pursuant to 18 U.S.C. § 1111(a) is not categorically a "crime of violence" under the definition of the force clause of § 924(c)(3)(A). Although such a result may seem "absurd" and contrary to "common sense," [Doc. 17 (quoting *In re Irby*, 858 F.3d 231, 236 (4th Cir. 2017)], this result is in fact consistent with the broad conduct covered by the federal murder statute.

6

Federal murder is not a crime of violence for two reasons: (1) the broad statute does not categorically require the *intentional* use of force, and (2) the statute does not require the use of *violent physical* force.

### a. Federal Murder Does Not Categorically Require the Level of Intent Necessary of a Crime of Violence.

The Fourth Circuit has held that "recklessness, like negligence, is not enough to support a determination that a crime is a 'crime of violence.'" *Garcia v. Gonzalez*, 455 F.3d 465, 469 (4th Cir. 2006). Similarly, the Supreme Court has noted that "the merely reckless causation of bodily injury . . . may not be a 'use' of force." *United States v. Castleman*, 572 U.S. 157, 169 (2014).

The Court remarked in *Castleman* that "[w]e held in *Leocal* [*v. Ashcroft*, 543 U.S. 1 (2004)] that "'use' requires active employment," rather "than negligent or merely accidental conduct," but "*Leocal* reserved the question of whether a reckless application of force could constitute a 'use' of force." *Castleman*, 572 U.S. at 169 n.8 (citing *Leocal*, 543 U.S. at 9, 13). The Court went on to recognize that "the Courts of Appeals have almost uniformly held that recklessness is not sufficient." *Castleman*, 572 U.S. at 169 n.8 (citing, *inter alia*, *Garcia*).

As the Government noted in its November 2019 motion to stay these proceedings [Doc. 15], the Supreme Court recently granted certiorari on the question of whether a criminal offense that can be committed with a mens rea of recklessness

7

can qualify as a "violent felony" under the Armed Career Criminal Act[3] in the case of *Walker v. United States*, 140 S. Ct. 519 (2019). On January 27, 2020, the Supreme Court dismissed the petition in *Walker* because of the petitioner's death. But on March 2, 2020, the Court granted certiorari in *Borden v. United States*, 206 L. Ed. 2d 253 (2020), to again resolve the question of whether the "use of force" clause in the Armed Career Criminal Act encompasses crimes with a mens rea of recklessness.

Until the Supreme Court or the Fourth Circuit holds otherwise, this Court is bound by *Garcia* and its holding that recklessness is not a sufficient mens rea to support a determination that a crime is a "crime of violence." *Garcia*, 455 F.3d at 469; *see also United States v. Vinson*, 805 F.3d 120, 125 (4th Cir. 2015) (use of physical force required of crime of violence must involve intent beyond mere recklessness or negligence).

First-degree murder under § 1111 requires a mens rea of only "malice aforethought." *See* 18 U.S.C. § 1111(a) ("Murder is the unlawful killing of a human being with malice aforethought."). It is well established that "[p]roof of the existence of malice does not require a showing that the accused harbored hatred or ill will against the victim or others," and "[n]either does it require proof of an intent

---

[3] The ACCA statute at issue in *Walker* is the same statute at issue in *Johnson* and parallels the statute at issue here nearly identically. *Compare* 18 U.S.C. § 924(e)(2)(B) *with* § 924(c)(3).

to kill or injure." *United States v. Fleming*, 739 F.2d 945, 947 (4th Cir. 1984). Rather, "[m]alice may be established by evidence of conduct which is reckless and wanton and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *Id.* at 947-48 (citations and quotations omitted). Because recklessness is sufficient to establish the malice aforethought required to establish the mens rea for first-degree murder, then necessarily first-degree murder does not qualify as a "crime of violence" under § 924(c)(3) because it does not categorically require a sufficient level of intent.

This Court has tried to distinguish the rule from *Garcia* as applied to the recklessness required for a murder conviction by noting that "[t]here is a difference between mere recklessness and malice," as "malice aforethought . . . is the distinguishing characteristic which, when present, makes a homicide murder rather than manslaughter." *Umaña v. United States*, 229 F. Supp. 3d 388, 394 (W.D.N.C. 2017) (citing *Fleming*, 739 F.2d at 947). This Court seemed to acknowledge that malice aforethought still only required recklessness, just of a higher degree: "The difference between 'malice,' which will support a conviction for generic murder, and 'recklessness' which will permit a conviction only for generic manslaughter, 'is one of degree rather than kind.'" *Umaña*, 229 F. Supp. 3d at 395 (quoting *Fleming*, 739 F.2d at 948). But, without citation to any controlling authority, the Court simply

9

asserted that this heightened degree of recklessness for malice was sufficient to bring it outside the scope of *Garcia*'s holding. *Umaña*, 229 F. Supp. 3d at 395 ("Thus, generic 'malice aforethought' requires a higher degree of intent than "reckless" conduct" and "[t]ogether, the elements of generic murder categorically require the 'use ... of physical force against the person . . . of another,' as those terms have been interpreted by the U.S. Supreme Court.").[4]

However, this reasoning is foreclosed by Fourth Circuit precedent. The Fourth Circuit's decision in *Garcia* relied on its earlier decision in *Bejarano-Urrutia v. Gonzales*, 413 F.3d 444 (4th Cir. 2005). The petitioner in *Bejarano-Urrutia* contended that involuntary manslaughter in Virginia was not a crime of violence. The Fourth Circuit agreed, *id.* at 447, even though the "[t]he crime at issue here . . . requires the killing of a person as a proximate result of the defendant's *reckless disregard for human life*." *Id.* at 446 (emphasis added). Thus, a reckless disregard for human life, which is certainly a higher level of intent than mere reckless behavior, still does not suffice to qualify as a crime of violence.

The line between the extreme disregard for human life required for malice aforethought and mere reckless disregard for human life is, again, only one of degree

---

[4] Because the federal statute at issue in *Umaña* did not define murder, the Fourth Circuit analyzed the generic definition of murder. *See Umaña*, 229 F. Supp. 3d at 392.

Case 1:16-cv-00212-MR    Document 21    Filed 03/30/20    Page 13 of 28

rather than of kind.  As the Ninth Circuit has put it, "disregard for human life becomes more callous, wanton or reckless, and more probative of malice aforethought, as it approaches a mental state comparable to deliberation and intent.'" *United States v. Lesina*, 833 F.2d 156, 159 (9th Cir. 1987).

But, critically, the *kind* of mens rea required for both malice aforethought and lesser manslaughter charges is still *recklessness*.  Indeed, in holding that federal second-degree murder is not a crime of violence, the Ninth Circuit noted that "[i]t is of no consequence that the recklessness required for second-degree murder must be 'extreme' and goes beyond ordinary recklessness" because "[r]eckless conduct, no matter how extreme, is not intentional."  *United States v. Begay*, 934 F.3d 1033, 1040 (9th Cir. 2019).

Regardless, in *Fleming* itself, the Fourth Circuit adopted a definition of malice that is indistinguishable from the standard of recklessness that did not suffice to support a crime of violence in *Bejarano-Urrutia*.  In *Fleming*, the Court explained that "[t]o support a conviction for murder, the government need only have proved that [a] defendant" acted "with a heart that was without regard for the life and safety of others."  739 F.2d at 948 (citing *United States v. Hinkle*, 487 F.2d 1205, 1207 (D.C.C. 1973), wherein the D.C. Circuit held that "'malice' is a state of mind showing a heart that is without regard for the life and safety of others.").  A malicious "heart that is without regard for the life and safety of others" is indistinguishable

11

from the "reckless disregard for human life," which the Fourth Circuit found did not qualify as a crime of violence. *See Bejarano-Urrutia*, 413 F.3d at 446.

Even more, it is well-established that merely unintentional or accidental conduct resulting in death during the commission of a felony provides the malice necessary for a first-degree murder conviction under § 1111(a). *See, e.g.*, *United States v. Singletary*, 166 F.3d 336, 1998 WL 879059, at *2 (4th Cir. 1998) (per curiam) (noting defendant conceded that accidental behavior resulting in death during robbery "fell within the felony murder provisions of § 1111").

As the Supreme Court has noted, "it is not unusual to punish individuals for the *unintended consequences* of their unlawful acts," and "[t]he felony-murder rule is a familiar example: If a defendant commits an *unintended* homicide while committing another felony, the defendant can be convicted of murder. *Dean v. United States*, 556 U.S. 568, 575 (2009) (citing 18 U.S.C. § 1111) (emphasis added). Thus, a defendant can commit first-degree murder under federal law with a mens rea of a complete lack of intent with respect to the homicide.

First-degree murder can be committed with a mens rea of mere recklessness, and this fact compels the conclusion that first-degree murder is not categorically a crime of violence.[5]

_____

[5] The Fourth Circuit's decision in *In re Irby*, 858 F.3d 231 (4th Cir. 2017), does not foreclose relief for these reasons as *In re Irby* not only involved a conviction under

### b. Federal Murder Does Not Categorically Require the Level of Force Necessary of a Crime of Violence.

First degree murder under 18 U.S.C. § 1111 also fails to qualify as a crime of violence because it does not categorically require the use of violent physical force. The "physical force" required for a crime of violence is "*violent* force – that is, force capable of causing physical pain or injury to another person." *Johnson (Curtis) v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original).

Felony murder under 18 U.S.C. § 1111 is again instructive. The statute dictates that "*[e]very* murder . . . committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery" is first degree murder. As detailed above, this covers even accidental killings during the course of these felonies. *See Dean*, 556 U.S at 575.

Many of these underlying predicate felonies, by their plain terms, do not "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § 924(c)(3)(A).

Arson does not require the element of using force against the "person or property of *another*" because it may be accomplished by setting fire to one's own

---

18 U.S.C. § 1111, but also § 1513, which covers intentional killings or attempts to kill in retaliation against a witness, victim, or informant.

property, or simply conspiring to commit an arson prior the use of any force at all. *See* 18 U.S.C. § 81. A person is guilty of federal arson if, within the jurisdiction of the United States, he or she "willfully and maliciously sets fire to or burns *any* building, structure or vessel, [or] *any* machinery or building materials or supplies . . . " or "attempts or *conspires* to do such an act." *Id.* (emphases added).

The crime of escape certainly does not have force as an element. The statute merely states that "[w]hoever escapes or attempts to escape from the custody. . . " of a long list of various federal custody arrangements is guilty of escape. *See* 18 U.S.C. § 751(a).[6] Similarly, treason and the several federal espionage statutes do not require force as an element of the offense. *See* 18 U.S.C. §§ 792-99, 2381. The crime of sabotage is accomplished, *inter alia*, when a defendant simply makes defective war material to obstruct the United States in preparing for war. *See* 18 U.S.C. § 2154.

And, as detailed below, aggravated sexual assault does not require the use of violent physical force, and the Fourth Circuit has already held that kidnapping is not

---

[6] The Fourth Circuit's prior cases finding that federal escape is a "crime of violence" are no longer persuasive as they relied on the vague language of "potential risk" found in the "residual clause" of § 924(c)(3)(B) that the Supreme Court has now ruled is unconstitutionally vague. *See, e.g.*, *United States v. Dickerson*, 77 F.3d 774, 774 (4th Cir.1996).

a crime of violence within the meaning of the force clause of § 924(c)(3)(A). *See*

*United States v. Walker*, 934 F.3d 375, 379 (4th Cir. 2019).

*Every* accidental death occurring during the perpetration of all of these felonies is first-degree murder. Thus, first-degree murder arising out of these felonies does not categorically require force at all, much less the "*violent* force – that is, force capable of causing physical pain or injury to another person," *Johnson (Curtis)*, 559 U.S. at 140, mandated by the Supreme Court. Any such accidental death occurring during the perpetration of such a felony, many of which do not require the use of force at all, qualifies as first-degree murder. *See Leocal*, 543 U.S. at 10 ("[W]e would not ordinarily say a person uses physical force against another by stumbling and falling into him.") (citations and quotations omitted).

Because neither (i) the intentional use of force nor (ii) the actual use of any violent physical force is categorically required for first-degree murder pursuant to § 1111, federal murder is not a crime of violence under the force clause of § 924(c)(3)(A).

The Fourth Circuit's cases in *United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019) and *In re Irby*, 858 F.3d 231 (4th Cir. 2017), are not controlling because, as the Government recognizes, these cases dealt with statutes other than federal first-degree murder. [Doc. 17 at 12-13]. *Irby* did not address the arguments Mr. Jackson raises before this Court, but rather addressed only whether the use of *indirect* force

15

was sufficient to establish the force necessary to qualify second-degree retaliatory murder as a crime of violence. *Irby*, 858 F.3d at 234-36. *Mathis* did nothing more than generally cite *Irby* without any further analysis. *Mathis*, 932 F.3d at 265.

## 2. Aggravated Sexual Assault Is Not Categorically a Crime of Violence Pursuant to § 924(c)(3)(A).

The Government contends that aggravated sexual assault, 18 U.S.C. 2241(a), constitutes a crime of violence under the force clause of § 924(c)(3)(A), because two different parts of the statute require the use of force. The Government contends that, first, "knowingly caus[ing] another person to engage in a sexual act" requires the use of force, and, second, the statute requires that "the defendant either use force against or threaten another person." [Doc. 17 at 17]. Neither of these elements of aggravated sexual assault *categorically require* the use of force.

### a. Engaging in a Sexual Act Categorically Does Not Require the Use of Force.

The Government acknowledges that the force clause requires "'*violent* force – that is, force capable of causing physical pain or injury to another person.'" *United States v. Hammond*, 912 F.3d 658, 661 (4th Cir. 2019) (quoting *Johnson (Curtis)*, 559 U.S. at 140). But, the Government argues that *any* contact with the genitals or anus constitutes such violent force. [Doc. 17 at 17]. This simply is not true. Four kinds of "sexual acts" are defined by the statute. *See* 18 U.S.C. § 2246(2)(A) to (D). None *categorically require* violent physical force.

16

Two of these subsections involve the penetration of genital openings, "however slight." § 2246(2)(A) & (C). This language signals that the statute is intended to cover all sexual penetration, regardless of the physical circumstances.

All sexual assaults involving penetration require *some* amount of force, and all may cause mental pain or injury, but they simply do not categorically involve the "*violent* force . . . causing *physical* pain or injury to another." *Johnson (Curtis)*, 559 U.S. at 140 (second emphasis added). A sexual assault can be committed through a penetration that does not rise to the level of "hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling, *id.*, or a "pull," "yank[]," or "shov[e]." *Hammond*, 912 F.3d at 664. *See also Stokeling v. United States*, 139 S. Ct. 544, 554 (2019) (quoting *Johnson (Curtis)*). "However slight" means what it says: there is no requirement that the penetration cause physical pain, much less *violent* physical pain.

Notably, the Government does not even attempt to distinguish *United States v. Leshen*, 453 F. App'x 408, 412-13 (4th Cir. 2011), from this case–because it cannot. The Fourth Circuit in *Leshen* held that a Pennsylvania statute requiring "penetration, however slight of the genitals or anus" is not a crime of violence "[b]ecause physical force is not necessary. *Id.* (quoting 18 Pa. Cons. Stat. § 3125).

The other two subsections defining "sexual act" by their plain language do not require violent physical force. Subsection B requires only "contact" in the most general sense: "contact between the mouth and the penis, the mouth and the vulva,

or the mouth and the anus." 18 U.S.C. § 2246(2)(B). The statute plainly covers all contact, and not all contact requires violent physical force.

The Government notes that the "genitals or anus" are "sensitive areas," and argues that the statute's limitation of contact to these areas narrows the statute to only cover contact with as much "potential for causing pain or injury as an ordinary pull, yank, shove, or grab." [Doc. 17 at 17 (citations and quotations omitted)]. But the statute, on its face and under common sense, does not limit contact to these areas because of any legislative concern about the application of force, but because these are indeed sensitive areas. *All* unwanted contact with these areas, as compared to all other areas of the body, is criminal. Thus, it is precisely because the statute is limited to these sensitive areas that *all* touching, and not just violent physical touching, is criminalized.

Similarly, subsection D defines a "sexual act" with reference to any "intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years." 18 U.S.C. § 2246(2)(D). For the same good reasons that *all* sexual contact is prohibited in subsection B, any intentional touching of the genitalia of a person under the age of 16 is criminalized as well.

There are good policy reasons for the aggravated assault statute to cover penetration that does not rise to the level of violent physical force. Common sense dictates that any penetration involving sexual assault, *however slight*, is criminal.

18

Common law recognized this as well. *See, e.g.*, *Johnson (Curtis)*, 559 U.S. at 146 (Alito, J., dissenting) (noting that the common law "approach recognized that an *offensive but nonviolent* touching (for example, unwanted sexual contact) may be even more injurious than the use of force that is sufficient to inflict physical pain or injury (for example, a sharp slap in the face).") (emphasis added).

Yet the Government now argues that there is no realistic possibility it would punish a sexual act under section 2241(a) that has no potential to cause any pain or injury. [Doc. 17 at 17-18]. Surely there is at least a realistic probability that the Government would want to punish aggravated sexual assaults that involved even the slightest penetration, or involved contact between a perpetrator's mouth and a victim's anus, penis, or vulva. Surely this is at least the "minimum conduct" that the government "would actually punish," *United States v. Salmons*, 873 F.3d 446, 448 (4th Cir. 2017). The Government now espouses a position that would not criminalize such conduct.

### b. Aggravated Sexual Assault Categorically Does Not Require the Use or Threatened Use of Force.

Aggravated sexual assault also is not a crime of violence because it can be accomplished without the use or threatened use of force within the meaning of the force clause of 18 U.S.C. § 924(c)(3)(B). Although threats of death (which certainly amount to a threatened use of force) are covered, a person is also guilty if they threaten a victim with "kidnapping." 18 U.S.C. 2241(a)(2). Kidnapping does not

19

categorically require the use or threatened use of physical force. *See infra*. Citing *Walker*, the Government posits that the only possible way kidnapping can be committed in a nonviolent way is through inveiglement, that is, enticement or deceit. [Doc. 17 at 17]. *Walker* does not mandate such an interpretation of kidnapping; indeed, it endorses the opposite. The Fourth Circuit in *Walker* acknowledged the Supreme Court's holding that kidnapping does not require any physical restraint at all. *See United States v. Walker*, 934 F.3d 375, 379 (4th Cir. 2019) (noting "In *Chatwin v. United States*, 326 U.S. 455 [] (1946), the Supreme Court explained that '[t]he act of holding a kidnapped person for a proscribed purpose necessarily implies an unlawful physical or *mental restraint* for an appreciable period against the person's will and with a willful intent so to confine the victim.' *Id.* at 460") (emphasis added in *Walker*).

The kidnapping of a person through mental restraint by definition requires no violent physical force. The commission of aggravated sexual assault during such a kidnapping also does not require the use of violent physical force, as detailed above. Thus, aggravated sexual assault is not categorically a crime of violence under the force clause.

The Government again contends that the Court should "focus on conduct that the government would actually punish." [Doc. 17 at 19 (quotation marks and citation omitted)]. It is not hard to imagine a criminal confining or abducting a

20

victim through the use of mental restraint and manipulation, thus committing kidnapping, and then illegally but non-violently touching the victim so as to commit aggravated sexual assault. But the Government contends now that it would not punish such criminal behavior.

### 3. Kidnapping Is Not Categorically a Crime of Violence Pursuant to § 924(c)(3)(A).

Finally, as the Government recognizes [Doc. 17 at 10], the Fourth Circuit has already held that federal kidnapping under 18 U.S.C. § 1201(a) "does not categorically qualify as a crime of violence under the force clause." *United States v. Walker*, 934 F.3d at 379.

## IV. MR. JACKSON'S CONVICTION MUST BE VACATED.

### A. The Error Is Not Harmless.

The Government contends that Mr. Jackson's unconstitutional conviction is harmless because Mr. Jackson's conviction necessarily included findings by the jury that Jackson committed the underlying federal offenses of murder, kidnapping, and aggravated sexual abuse. [Doc. 17 at 18.] But, as already detailed, Mr. Jackson was not charged separately with these predicate offenses, and he was not convicted of any offense other than the single conviction of violating 18 U.S.C § 924(c). Pursuant to the holdings of the Supreme Court, this single conviction is now unconstitutional. Mr. Jackson is entitled a new trial.

21

The Government argues that had murder and kidnapping been charged not as crimes of violence but "directly," then the jury surely would have found him guilty of these capital offenses and sentenced him to death based on the same evidence. However, this is just a speculative theory and not what occurred at Mr. Jackson's trial..   The Government's speculation as to what a grand jury *may* have indicted and what a jury of Mr. Jackson's peers *may* have found does not meet any legal standards.

The Government further argues that the "error that Jackson alleges would have required only slightly different allegations in the indictment." [Doc. 17, at 21]. But this argument actually favors Mr. Jackson because it would require a constructive amendment of the indictment.  Such a "constructive amendment of the indictment constitutes error *per se*" and "requires a reviewing court to conclusively presume that the defendant has been prejudiced by the constructive amendment and to forgo harmless error analysis." *United States v. Floresca*, 38 F.3d 706, 711 (4th Cir. 1994).  *See Stirone v. United States*, 361 U.S. 212, 215-16 (1960) (indictment may not be broadened through amendment except by the grand jury itself.").

Finding harmless error would require finding Mr. Jackson guilty of offenses that he had not been charged with in the indictment.  The Government argues now that "surely the grand jury would have found probable cause to charge those allegations," [Doc. 17 at 21 (quotations and citations omitted)], but the fact remains

that the grand jury did not so find.  The Government's remedy would require an impermissible constructive amendment of the indictment, and the Supreme Court recognizes that this affects a "defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury" and that "[d]eprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error."  *Stirone*, 361 U.S. at 216.  This Court cannot now hypothesize a guilty verdict that was not in fact rendered.  *See Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) ("[T]o hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be— would violate the jury-trial guarantee.").  To find the error harmless in this case would require even more structural error.

For these reasons, the Government's contention that this Court should find the error in this case harmless and enter judgment on a first-degree murder offense that Mr. Jackson was never charged with, [Doc. 17 at 21-22], is untenable.

### B.     The Result Is Not Absurd.

The Government contends that the constitutional errors in this case lead to the absurd result of murder not being considered a crime of violence under the law. [Doc. 17 at 12].  The Government relies on the Fourth Circuit's statements in *Irby* that "[c]ommon sense. . . dictates that murder is categorically a crime of violence

under the force clause," and such a conclusion is necessary to "avoid an absurd result."  858 F.3d at 236.

The proper result in this case is not absurd–it is a function of the broad statutory language defining the crimes.  Congress chose to define the crimes broadly, protecting a wide array of victims.  Such broad language, however, removed those offenses from the force clause.  Certainly as a general matter, murder can involve the use of violent physical force.  Common sense does lead to this conclusion.  But this "common sense" understanding of murder was covered by the residual clause, which intended to cover crimes such as murder "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3)(B).  The Supreme Court held the residual clause unconstitutionally vague in *Johnson* and *Davis*.  The question now is not one of common sense but one of statutory analysis.  Murder and aggravated sexual assault can only qualify as "crimes of violence" under the limited definition of the force clause.  As detailed above, it is far from "absurd" that murder and aggravated sexual assault fail to qualify under this narrow provision.

## CONCLUSION

For these reasons, and the reasons stated in Mr. Jackson's initial motion for relief, Mr. Jackson's single count of using a firearm during a crime of violence resulting in the death of a human being must be vacated.  The residual clause is

24

unconstitutionally vague, and none of Mr. Jackson's predicate crimes of violence qualify as a crime of violence under the force clause. The constitutional error is not harmless, and Mr. Jackson cannot now be found guilty by this Court of crimes he was not charged with by the grand jury in his indictment. Mr. Jackson's single count must be vacated.

Respectfully Submitted, this 30th day of March 2020.

s/Frank E. Schall
John A. Fagg, Jr.
N.C. State Bar No. 28516
Frank E. Schall
N.C. State Bar No. 40052
Moore & Van Allen PLLC
100 N. Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Fax: (704) 378-2092
johnfagg@mvalaw.com
frankschall@mvalaw.com

***ATTORNEYS FOR PETITIONER***
***RICHARD JACKSON***